The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

C. PAUL SANDIFUR, JR., THOMAS G. TURNER, ROBERT A. NESS, THOMAS R. MASTERS, DAN W. SANDY, DAVID R. SYRE, and TRILLIUM CORPORATION,

Defendants.

CASE NO. C05-1631C

ORDER

I.   INTRODUCTION

This matter has come before the Court on the following motions: (1) Defendant Sandy's motion to dismiss (Dkt. No. 95) and (2) Defendants Trillium Corporation and David Syres's motion to dismiss (Dkt. No. 91). Having carefully considered the papers filed by the parties in support of and in opposition to the motions, the Court has determined that no oral argument shall be necessary. For the reasons that follow, the motions are DENIED.

II.   BACKGROUND

Plaintiff, the Securities & Exchange Commission ("SEC"), filed a complaint alleging that Defendants, several former executives and business associates of Metropolitan Mortgage & Securities Co. ("Metropolitan"), participated in a fraudulent scheme to mislead investors about the company's financial performance. (Compl. ¶ 1.) The complaint alleges that prior to the bankruptcy, Metropolitan and the defendants in this action schemed to improperly boost the company's revenues through four real estate

ORDER - 1

transactions conducted in the third and fourth quarters of Metropolitan's fiscal year 2002. (*Id.* ¶ 3.)

On March 2, 2006, the Court entered an order dismissing the claims against Defendants Trillium, Syre, and Sandy without prejudice, and giving the SEC 45 days to file an amended complaint. The SEC subsequently filed an amended complaint on April 17, 2006.

Defendants Trillium, Syre, and Sandy move to dismiss the amended claims against them.

III.  ANALYSIS

    *A.*    *Applicable standards*

FED. R. CIV. P. 12(b)(6) provides that an action will be dismissed for failure to state a claim upon which relief may be granted. A court will grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). While a court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party, conclusory allegations of law or unwarranted inferences of fact urged by the nonmoving party are insufficient to defeat a motion to dismiss. *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001). In addition, a court's obligation to construe allegations in the light most favorable to the nonmoving party does not mean that those allegations must be construed in a light favorable to the nonmoving party, if such a construction cannot reasonably be made.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." Rule 9(b) applies not only to claims in which fraud is an essential element, but also to claims grounded in allegations of fraudulent conduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103–1104 (9th Cir. 2003).

The Ninth Circuit has held that "allegations of fraud [must be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

ORDER – 2

against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). The requirements of Rule 9(b) are satisfied if the complaint provides the who, what, where, when and how of the alleged fraud. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Failure to satisfy Rule 9(b) will result in dismissal of the claims. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

The Court's March 2, 2006 order dismissed the claims against these three defendants because the SEC had failed to allege the necessary knowledge element of an aiding and abetting claim. The Court explained, "in order to have stated a claim against these defendants for aiding and abetting violations, the complaint must allege that they had actual knowledge that the Trillium/Jeff Properties transaction was structured in such a way as to permit the improper reporting of the gain from the transaction." (Mar. 2, 2006 Order 19.) The Court found that knowledge that the transaction was "highly atypical" did not satisfy this requirement. (*Id.*) The Court also observed that the SEC had failed to allege any connection between these defendants' involvement in structuring the transaction and their knowledge that it was being done for allegedly illegal purposes. (*Id.* at 20.)

   B.   *Defendant Sandy's motion to dismiss*

The SEC's amended complaint alleges the following, with respect to Defendant Sandy's "actual knowledge" that he was substantially assisting Metropolitan in an alleged fraud:

- Sandy was "aware in early September 2002 of the proposed deal terms"[1] (Am. Compl. ¶ 30);
- "Sandy, although not a Trillium employee, was a friend and business associate of Syre's and a Trillium creditor, with approximately $6 million in outstanding loans to the company" (*id.*);
- Sandy maintained an office at Trillium and was authorized to act on its behalf (*id.*);
- "Sandy learned that Metropolitan's auditors had determined that Metropolitan could not recognize an immediate gain on the sale . . . to Trillium . . . where Metropolitan

---

[1] The salient "deal terms" are that Metropolitan was to take a note from Trillium for 80% of the purchase price, with the remaining 20% to be provided through a loan to Trillium from Old Standard Life Insurance Company.

ORDER – 3

- and its related companies were also loaning Trillium the funds to buy the properties" (*id.* ¶ 35);
- Sandy thus understood that Metropolitan could not sell the properties to Trillium and that the sale would have to be to an independent third party (*id.* ¶ 36);
- Sandy knew that without the sale to Trillium, Trillium would not get the loan it needed (*id.* ¶ 37);
- Sandy discussed the shell company strategy with Turner and the Trillium Vice President, informing them that he would only proceed if Trillium promised to protect him and the shell company against the loss of the down payment (provided by Sandy through the shell) (*id.* ¶ 39);
- Sandy also discussed the shell company strategy with Syre and the Trillium Vice President (*id.* ¶ 43);
- Sandy knew, based on his knowledge that (a) Trillium would protect his down payment, and (b) the shell would delay transfer of the properties to Trillium until after Metropolitan had filed its financial statements, that the shell was not independent of Trillium (*id.*); and because of this, he also knew that the shell strategy did not comply with the auditors' gain recognition guidance; and
- Sandy knew that Metropolitan intended to conceal key terms of the deal from its auditors (*id.* ¶ 52).

These allegations provide much more depth regarding Defendant Sandy's alleged knowledge and how he knew. The allegations are clearly sufficient with respect to Defendant Sandy's knowledge of why the shell company was not truly independent of Trillium, providing details of conversations he allegedly had and demands that he allegedly made.

The allegations are much less detailed with respect to how Sandy knew that the original deal was improper. The amended complaint alleges only that he "learned" that Metropolitan could not recognize the gain from the deal as it was originally structured because Metropolitan was providing the funds. Although the SEC makes no allegations as to how Sandy "learned" this, the complaint need not reach this degree of granularity. The Court's March 2, 2006 order merely required that the SEC be able to allege that Sandy had "actual knowledge" that he was providing *substantial assistance* to Metropolitan in executing the alleged fraud. This requirement does not translate into a requirement for the minute details of how Sandy may have acquired the foundational elements adding up to actual knowledge of substantial

ORDER - 4

assistance and participation in a fraud.

While the allegations in the SEC's original complaint did not add up to "actual knowledge" of substantial assistance in a fraud — that complaint added up only to an implication that Sandy knew that the transaction was "highly atypical" — the allegations in the SEC's amended complaint satisfy the standard set forth in the March 2, 2006 order. Accordingly, Defendant Sandy's motion to dismiss is DENIED.

    C.    *Defendants Trillium & Syre's motion to dismiss*

The SEC's amended complaint alleges the following, with respect to Defendants Trillium and Syre's "actual knowledge" that they were substantially assisting Metropolitan in an alleged fraud:

- A Trillium Vice President and Syre (Trillium's CEO) were "aware in early September 2002 of the proposed deal terms" (Am. Compl. ¶ 30);
- Syre and the Trillium Vice President were authorized to act on Trillium's behalf (*id.*);
- "Sandifur told Syre that E&Y had identified some 'accounting snags' with the proposed deal. Based on his communications with Sandifur and others . . . Syre understood" that Metropolitan could not recognize an immediate gain on the sale . . . to Trillium . . . where Metropolitan and its related companies were also loaning Trillium the funds to buy the properties (*id.* ¶ 33);
- "Sandifur told the Trillium Vice President that so long as Metropolitan and its related companies were providing Trillium with '100% financing'" Metropolitan could not recognize the gain on the sale (*id.* ¶ 34);
- Syre and the Trillium Vice President thus understood that Metropolitan could not sell the properties to Trillium and that the sale would have to be to an independent third party (*id.* ¶ 36);
- They also knew that without the sale to Trillium, Trillium would not get the loan it needed (*id.* ¶ 37);
- The Trillium Vice President was a party to the call in which Sandy discussed the shell company strategy with Turner, and in which Sandy informed them that he would only proceed if Trillium promised to protect him and the shell company against the loss of the down payment (provided by Sandy through the shell) (*id.* ¶ 39);
- Sandy also discussed the shell company strategy with Syre and the Trillium Vice President (*id.* ¶ 43);
- Syre and the Trillium Vice President knew, based on their knowledge that (a)

ORDER - 5

> Trillium would protect Sandy's down payment, and (b) the shell would delay transfer of the properties to Trillium until after Metropolitan had filed its financial statements, that the shell was not independent of Trillium (*id*.); and because of this, they also knew that the shell strategy did not comply with the auditors' gain recognition guidance; and
>
> - Trillium and Syre knew that Metropolitan intended to conceal key terms of the deal from its auditors (*id*. ¶ 52).

As in Sandy's case, these allegations provide much more depth regarding Trillium and Syre's alleged knowledge and how they acquired or synthesized that knowledge.

The defendants argue that these allegations add up only to an allegation that they helped Metropolitan recognize a gain. (Trillium/Syre Mot. 7.) However, the defendants' summary of the allegations immediately preceding this argument overlooked the allegation that Trillium and Syre knew that Metropolitan intended to conceal key terms of the deal from its auditors. Thus, the SEC's amended complaint actually alleges that Trillium and Syre helped Metropolitan recognize a gain on a transaction, key terms of which they knew Metropolitan did not intend to disclose to its auditors.

As in Sandy's case, while the allegations in the SEC's original complaint against Trillium and Syre added up only to an implication that they knew that the transaction was "highly atypical," the allegations in the SEC's amended complaint satisfy the standard set forth in the March 2, 2006 order. Accordingly, Defendants Trillium and Syre's motion to dismiss is DENIED.

IV.   CONCLUSION

In accordance with the foregoing, the motions to dismiss are DENIED.

Dated this 24th day of August, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

ORDER - 6