UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>    v.<br><br>C. PAUL SANDIFUR, JR., THOMAS G. TURNER, ROBERT A. NESS, THOMAS R. MASTERS, DAN W. SANDY, DAVID R. SYRE, and TRILLIUM CORPORATION,<br><br>                Defendants. | CASE NO. C05-1631C<br><br>ORDER |

The following motions are now before the Court:

1.     The United States's Motion to Intervene and for a Limited Temporary Stay of Discovery (Dkt. No. 130),

2.     Defendant Sandifur's Motion For Walsh Act Subpoena of Ted Anderson (Dkt. No. 116).

After considering the relevant motions and related submissions, the Court rules as follows:

**I     BACKGROUND**

This case involves an action against Defendants for securities fraud. On September 22, 2005, Thomas Turner was charged in a seven-count criminal indictment with making false statements and

ORDER – 1

material omissions to the outside accountants for Metropolitan Mortgage and Securities (Metropolitan) and Summit Securities (Summit) in connection with the accountants' fiscal year 2002 audit. Trial has been continued three times and is expected to be tried as presently scheduled in April 2007. According to the indictment, Turner misled Ernst and Young, Metropolitan's independent auditors, about the true nature of a financial transaction in which Metropolitan sold two pieces of property and concealed the contingent nature of a related $17.6 million Summit loan. Based on the representations of Turner and others affiliated with Metropolitan, and various documents they provided, the outside accountants concurred with the recording of immediate profit on the sale of certain properties and certified Metropolitan and Summit's financial statements to the Securities and Exchange Commission (SEC).

On September 26, 2005, the SEC filed the civil complaint in this case against Turner, several other Metropolitan executives including former Chief Executive Officer (CEO) C. Paul Sandifur, Jr., former Controller Robert Ness, and former Vice President Thomas R. Masters, as well as former business associates David Syre, Dan Sandy, and the Trillium Corporation. The SEC civil complaint alleges that Metropolitan's management falsified the company's 2002 financial results by reporting profits from circular real estate sales where Metropolitan purported to sell property to buyers who, in fact, received all of the money to pay for the purchase from Metropolitan or its affiliates. The SEC alleges that the fraud made Metropolitan appear profitable and facilitated further sales of its bonds and preferred stock to investors.

The United States now moves to intervene in the civil case and seeks to stay the depositions of several individuals. The government seeks to stay only the depositions of Jack Behrens, Greg Kormanik, Ted Anderson and Erin Albertson—who are or were employees of Metropolitan's independent auditors, Ernst and Young—and Leif Olsson, a former employee of Trillium Corporation.

The Defendants also seek a subpoena under the Walsh Act, 28 U.S.C. § 1783, to compel the deposition of one of these witnesses: Mr. Anderson. Mr. Anderson is a nonparty witness who currently resides in the Grand Duchy of Luxembourg. Mr. Anderson was an Ernst & Young manager assigned to

ORDER – 2

audit the Metropolitan account during the 2002 fiscal year. Defendant's Motion alleges that Mr. Anderson "personally approved Metropolitan's accounting treatment and, specifically, its recognition of gain for each of the four transactions underlying the Complaint." (Def. Sandifur's Mot. for Walsh Act Subpoena 2.)

Mr. Anderson voluntarily appeared for a deposition in Seattle for the SEC in January of 2005 as part of an agreement between the SEC and Ernst & Young. At that time, Mr. Anderson was working for Ernst & Young in Luxembourg, as is still the case today. Because the case was still in its investigative stage in January of 2005, Defendants were not told about the SEC deposition of Mr. Anderson when it occurred. Defendants were eventually given a transcript of the deposition in November of 2005. Mr. Anderson has declined Defendant's request to voluntarily appear in the United States for a deposition. They now seek a subpoena under the Walsh Act to compel his deposition testimony.

## II.   ANALYSIS

### A.   THE UNITED STATE'S MOTION TO INTERVENE

The Federal Rules allow for permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. Proc. 24(b)(2). The Rules further provide that "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* Here, common questions of fact exist between the pending criminal action and the parallel civil proceeding, such that intervention should be permitted for the limited purpose of consideration of the motion for a temporary stay of discovery.

### B.   THE UNITED STATES'S MOTION FOR A TEMPORARY STAY OF DISCOVERY

"[A] court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (internal quotations and alterations omitted). The Ninth Circuit has outlined several factors to consider

//

ORDER – 3

when deciding whether to stay a civil case when there is a parallel criminal action:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995)

Although courts have been receptive to Government stay requests in civil cases brought by parties other than the Government, results in recent years have been markedly different when the Government itself brings a civil lawsuit simultaneous with a criminal proceeding. Courts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation and the Government has used parallel proceedings to its advantage. *See, e.g.*, *SEC v. Kornman*, No. 3:04 Civ. 1803, 2006 WL 1506954 (N.D. Tex. May 31, 2006); *SEC v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005); *SEC v. Yuen*, No. 03 Civ. 4376, slip op. at 5, 11-13 (C.D. Cal. Oct. 2, 2003).

In this case, the United States has failed to show any real prejudice that would result from the simultaneous progression of both civil discovery and the criminal case. The Government offers nothing but the bare assertion that allowing depositions of the relevant witnesses will "significantly increase the potential for confusion and misunderstanding." (United States's Mot. to Intervene and For a Limited Stay of Disc. 4.) This Court can see no reason why the deponants would be confused.

The Government also argues that "[s]taying discovery is necessary to protect the integrity of the Government's investigation and ensure that the Defendants will not use the civil discovery process to obtain discovery that is not authorized in a criminal case." (*Id.* at 8 (internal quotations omittied).) This argument is based on the narrower scope of depositions in criminal cases, meaning that the criminal defendant may have the ability to use the civil process to obtain more information via deposition testimony than would otherwise be allowed prior to a criminal trial. *Id.* Had the Government thought this was a serious problem, it could have easily avoided it by waiting until after the criminal matter was

ORDER – 4

1  resolved to institute civil proceedings. Instead, the United States worked directly with the SEC and
2  voluntarily chose to institute both civil and criminal actions at the same time. As a result, the Defendants
3  are now facing very serious civil charges, and they have a strong interest in a timely resolution. *See Saad*,
4  229 F.R.D. at 92.

Thus, when balanced against the interests of the Defendants, the Court, and the public at large in the efficient resolution of the civil matter, the United States's generalized arguments carry little weight. Accordingly, this Court hereby denies the United States's Motion for a Temporary Stay of Discovery.

### C. THE WALSH ACT SUBPOENA

#### 1. REQUIREMENTS FOR THE ISSUANCE OF A WALSH ACT SUBPOENA

Under the Walsh Act, a U.S. Court may subpoena a national or resident of the United States who is in a foreign country in a civil matter if his testimony is (1) "necessary in the interest of justice," and (2) "it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner." 28 U.S.C. § 1783.

##### a. "NECESSARY IN THE INTERESTS OF JUSTICE"

While there is a "surprising shortage of pertinent case law involving the issuance of a subpoena under § 1783," those courts that have examined the Act in discovery disputes have generally read the "interests of justice" element in the context of "the predicate theory of federal pre-trial discovery—the production of relevant material essential for the full and fair litigation of a cause of action." *Estate of Ungar v. Palestinian Authority,* 412 F. Supp. 2d 328, 333 (S.D.N.Y. 2006) (citing *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517 (D. Colo. 2003)). Accordingly, the "interests of justice" element in discovery disputes only requires a compelling showing that the material sought would meet the relatively liberal standards set out in Federal Rule of Civil Procedure 26 for discoverable material. *See* Fed. R. Civ. Proc. 26(b) (allowing partes to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party" or discovery of any matter "reasonably calculated to lead to the discovery of admissible evidence"). In addition, a court may take into account "the nature of the

ORDER – 5

proceedings, the nature of the testimony or the evidence sought, the convenience of the witness or the producer of the evidence, the convenience of the parties, and other facts bearing upon the reasonableness of requiring a person abroad to appear as a witness or to produce tangible evidence." S. Rep. No. 88-1580, at 3791 (1964) (discussing amendments to the Walsh Act).

In this case, Defendants have clearly made such a showing regarding the testimony of Mr. Anderson. He is the person who personally reviewed the documents regarding all four mortgage transactions that form the core of the SEC's case. (*See* Def.'s Reply 2-3.) Though it is true that Mr. Anderson worked for an audit team and that other members of the team have been deposed by Defendants, deposition testimony by Mr. Anderson's direct supervisor in this matter has already suggested that it was Mr. Anderson—and not his supervisors—who personally reviewed the relevant documents. (*Id.*) That Mr. Anderson has relevant information is further demonstrated by the fact that the SEC thought it necessary to fly him to U.S. soil to depose him in early 2005. Requiring Mr. Anderson to be deposed by the Defendants—this time in a more convenient locale—is hardly unreasonable. Accordingly, the "interests of justice" element has been met.

### b. POTENTIAL ALTERNATIVE METHODS TO OBTAIN MR. ANDERSON'S TESTIMONY

Nonparty Ted Anderson argues that the Defendants should be required to resort to the procedures outlined in the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("the Hague Convention") in order to obtain his testimony. The Hague Convention is a multilateral treaty that was intended to provide a uniform procedure to be used in obtaining evidence in foreign countries. *See Generally*, *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987).

It is clear that the Hague Convention itself does not require its use as a first resort to obtain evidence located within foreign territory. *Id. at* 542. Thus, the issue is whether the Walsh Act, by its own terms, requires use of the Hague Convention procedures prior to the issuance of a subpoena.

ORDER – 6

1  The language of the Act states that in order to issue a subpoena in non-criminal proceedings the court must first find that "it is not possible to obtain [a witness's] testimony in admissible form without his personal appearance." 28 U.S.C. § 1783(a). Subpoenas may be issued when it is "impractical" to obtain the information. *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 2006 U.S. Dist. LEXIS 11014, at * 14 (S.D.N.Y. 2006). Sheer impossibility is not required. (*Id.*) Impracticality occurs, for example, where resort to alternative methods is unlikely to produce the relevant evidence in time to meet impending discovery deadlines. (*Id.*)

Use of the Hague Convention procedures in this case would be impractical. As in *CSI*, the discovery deadline of February 17, 2007 is only a few months away. (Dkt. No. 121.) Though the Parties disagree on precisely how long the Hague Convention procedures generally take to process letters of request, Mr. Anderson does not dispute that it can take up to a year, and that at the end of the process the government of Luxembourg may exercise its right Under Article 23 of the Hague Convention not to grant such a request. (*See* Def.'s Mot. 7.) Unlike the cases cited by Mr. Anderson, the issue here is not that the Hague Convention procedures are merely inconvenient because they would require more resources or expertise to implement, but rather that they are impractical in the context the looming discovery deadline and overall trial schedule. *Cf. In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 404 (E.D. Mich. 2003); *Hudson v. Hermann Pfauter GmbH & Co.* 117 F.R.D. 33, 38-39 (N.D.N.Y. 1987). Further, should the Hague Convention procedures fail to produce the relevant evidence, there would no longer be the option of resorting to the Federal Rules as a backup without severely disrupting the trial schedule. *Cf. Hudson*, 117 F.R.D. at 39 (noting that such a backup existed in a case where "[t]he court, if justice requires, [could] compel discovery . . . pursuant to the Federal Rules if the use of the Convention's provisions [left] plaintiffs at an unfair disadvantage.").

Mr. Anderson suggests that there would have been sufficient time utilize the Convention's procedures to obtain Mr. Anderson's testimony if Defendants had attempted to implement the Hague Convention procedures immediately when they received his SEC deposition testimony. (Anderson Opp'n

ORDER – 7

5.) This argument ignores the reality of the voluminous and complex discovery in this case where it appears that the Defendants acted with reasonable diligence. Further, the Walsh Act does not require a harsh rule of 20/20 hindsight to see whether it ever would have been possible to obtain the information via other means but rather whether, looking forward, it "*is* not possible to obtain [the] testimony in admissible form without [the witness's] personal appearance." 28 U.S.C. § 1783(a) (emphasis added). While a party's unreasonable delay may factor into the "interests of justice" analysis, the Act thus does not require denial of a subpoena where the alternative means would once have been theoretically feasible.

Accordingly, Defendants have demonstrated that it is not possible to obtain his testimony in admissible form without his personal appearance and have thus satisfied both requirements to obtain a Walsh Act subpoena.

## 2. LOGISTICS OF THE DEPOSITION

The Court has the discretion to impose "whatever conditions" on the issuance of a Walsh Act subpoena that "it considers proper." S. Rep. No. 88-1580, at 3791 (1964). Defendants request that the deposition take place in New York, or alternatively in London. (Def. Mot. 8-9.) If a subpoena is to be issued, Mr. Anderson requests that the deposition be conducted in Luxembourg. (Anderson Opp'n 9-10.)

While recognizing that the relevant factors point in many different directions, this Court finds that Luxembourg is, on balance, the most appropriate location for the deposition. This conclusion stems from the recognized need to minimize the burdens imposed on nonparty witnesses and sovereignty concerns of the relevant nations. *See, e.g.*, *High Tech. Med Instrumentation, Inc. v. New Image Indus. Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995). Forcing an unwilling nonparty witness to fly 4000 miles to New York seems excessive, even though holding depositions in Europe will increase the burdens on the parties' counsel. Though London might provide a convenient geographic middle ground, compelling a deposition in a country in which the witness is not a national, does not reside, and in a case in which the country has no interest in the litigation does not afford the proper respect to the sovereignty of Great Britain. Thus, the deposition should take place in Luxembourg, which should impose minimal burdens on the nonparty

ORDER – 8

witness by deposing him in his country of residence.

Any potential infringement on Luxembourg's sovereignty is outweighed by the imposition that the alternatives would impose on the nonparty witness. The Supreme Court has held that "American courts are not required to adhere blindly to the directives" of countries who oppose unauthorized, American-style discovery even when they have gone so far as to enact "blocking statutes." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987); *see also Valois of America Inc. v. Ridson Corp.*, 183 F.R.D. 344; *Rich v. KIS California, Inc,* 121 F.R.D 254, 258 (M.D.N.C. 1998). While this Court recognizes that the "interest of foreign nations in the sanctity and respect of their laws is both important and deserving of significant respect," *see In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 54 (D.D.C. 2000), in this case any potential sovereignty concerns are outweighed by the countervailing considerations regarding the significant burden that would otherwise be imposed on a nonparty witness.

//
//
//
//
//
//
//
//
//
//
//
//
//

ORDER – 9

### III. CONCLUSION

Accordingly, it is hereby ORDERED :

1. The United States's Motion to Intervene is hereby GRANTED for the limited purpose of the Motion for a Limited Temporary Stay of Discovery,

2. The United States's Motion for a Limited Temporary Stay of Discovery is DENIED;

3. Defendant Sandifur's Motion For Walsh Act Subpoena of Ted Anderson, is hereby GRANTED. Ted Anderson shall present himself for a deposition in Luxembourg on a date most convenient to Mr. Anderson and the parties, no later than February 1, 2007. The deposition will be conducted in accordance with the applicable Federal Rules of Civil Procedure.

SO ORDERED this 11th day of December, 2006.

_____
John C. Coughenour
United States District Judge

ORDER – 10